## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Mohamed Elsherif, | Case No. 18-cv-2998-DWF-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| Mayo Clinic, et al., | |
| Defendants. | |

This matter is before the Court on several discovery-related motions: A Motion to Compel additional 30(b)(6) depositions (ECF No. 213); a Motion to Strike Errata (ECF No. 290); and a Motion for Sanctions (ECF No. 302).

### I.    Factual Background

Discovery in this action has been long, protracted, and contentious, and the facts surrounding this litigation can be found in many previous Court orders. Relevant to this Order is the following.  During the course of discovery, two depositions of Mayo Clinic pursuant to Rule 30(b)(6) were taken.  The topics covered were stipulated to by the parties, but five topics were still in dispute at the time of the deposition.  Dr. Elsherif has moved to compel another 30(b)(6) deposition covering these disputed topics.

The other two motions now at issue are related to one other.  On March 20, 2020, Mayo Clinic deposed Dr. Elsherif.  The deposition was done virtually because of the COVID-19 pandemic and because Dr. Elsherif is currently living in Tanta, Egypt.  After the deposition, Dr. Elsherif submitted an 11-page errata sheet containing 98 changes.  Many of these revisions directly contradict or substantially alter his deposition testimony.  For example, during Dr. Elsherif's deposition, he was questioned about a physician who he used to work with, Dr. Bydon.  Dr. Elsherif asserts that Dr. Bydon wrote him a letter of recommendation, but Dr. Bydon denies ever writing it.  In the deposition, Dr. Elsherif was asked if Dr. Bydon was honest. Dr. Elsherif answered, "yes."  However, in his errata sheet, Dr. Elsherif seeks to change his "yes" answer to the following:

> No. shockingly he is not honest because he participated with his boss Dr. Spinner in falsely accusing me with unauthorized access to non-public Mayo area and even falsified emails on the alleged incident. This is not how honest individuals behave. I never ever entered any of mayo non-public areas after my termination. Mayo did not and cannot produce any security footages showing date, time, location, and my identity from any of those security cameras scattered everywhere because such incident never happened in the first place.

(Declaration of George Wood, Ex. 4, Entry 35/23.) Dr. Elsherif claimed that this change was to "correct[] inadvertently wrong answer." (*Id.*)

Mayo Clinic has moved to strike the entirety of Dr. Elsherif's errata sheet, including revisions made to correct reporting errors or to provide minor clarification. The disputed changes are listed in a chart attached to the motion papers. (Declaration of George Wood, Ex. 4.) In response to Mayo's motion, Dr. Elsherif has moved for sanctions, claiming that Mayo improperly deposed him for nine hours, prevented his attorney from cross-examining him during the deposition, and denied him access to an interpreter. (ECF No. 302.)

## II. Analysis

The Court will address each motion in turn. For the reasons set forth below, the Court denies Dr. Elsherif's motions and grants Mayo's motion in large part.

### A. Motion to Compel 30(b)(6) Topics

Dr. Elsherif seeks to compel a deposition under Federal Rule of Procedure 30(b)(6) with respect to the following topics:

Topic 16: The factual and legal bases for Mayo's response to the Minnesota Department of Human Rights regarding Elsherif's Charge of Discrimination;

Topic 17: The factual and legal bases for Mayo's response to the EEOC regarding Elsherif's Charge of Discrimination;

Topic 18: The factual and legal bases for Mayo's response to the Department of Labor;

Topic 19: The factual and legal bases for Mayo's affirmative defenses, Paragraphs 178–250 of its Answer;

Topic 20: Plaintiff's medical, psychiatric, and occupational evaluation, treatment, and EAP records with Mayo during and after his appointment with

> Mayo regarding or referring to Plaintiff's "*disclosed medical condition to Dr. Spinner and a member of Human Resources*" set forth in Paragraph 21 of Defendants' Answer.

Mayo argues that topics 16–19 should not be compelled because they are overbroad. The Court agrees. Federal Rule of Civil Procedure 30(b)(6) permits a party to name as a deponent a "public or private corporation…or other entity and must describe with reasonable particularity the matters for examination." And Rule 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case." However, discovery is not unlimited. Discovery that is unreasonably burdensome, cumulative, or outside of the scope permitted by 26(b)(1) should be limited by the Court. Fed. R. Civ. P. 26(b)(2)(C). Courts have broad discretion in deciding motions to permit or limit the scope of discovery. *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993).

A party seeking a deposition under Rule 30(b)(6) "must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000). Indeed, a number of courts have found 30(b)(6) topics to be overbroad when they "require the opposing party 'to marshal all of its factual proof and prepare a witness to be able to testify on a particular defense' or claim." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-cv-3183 (ADM/LIB), 2018 WL 9919939 at *9 (D. Minn. Jan. 23, 2018) (quoting *In re Independent Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 653 (D. Kan. 1996)) (collecting cases).

The infirmity about which the *Inline Packaging* court warned is precisely the one from which four of Dr. Elsherif's proposed topics suffer. Topics 16–19 all seek "the factual and legal bases" for Mayo's responses to a variety of administrative and legal actions that Dr. Elsherif has brought against it. These requests are exactly the type of overbroad discovery inquiry rejected by this and other courts. Indeed, it is "widely-accepted" that 30(b)(6) topics "which seek to depose on all of the bases for the claims in a case and the contentions made in support of those claims" are overly broad. *Inline Packaging, LLC*, 2018 WL 9919939 at *10. Setting aside the obvious concerns of privilege and attorney work-product doctrine implicated by these topics, permitting such broad inquiry via 30(b)(6) topics would be burdensome, unwieldy, and likely disproportionate to the needs of the case. Furthermore, as noted by another District Court, a Rule 30(b)(6) deponent, who is not an attorney, "should not be expected to present orally a fully reliable and sufficiently complete account of all the bases for the

contentions made and positions taken by a corporate party." *Stoneeagle Servs., Inc. v. Pay-Plus Solutions, Inc.*, No. 13-cv-2240-T-33MAP, 2015 WL 12843846 at *2 (M.D. Fla. Apr. 29, 2015) (internal quotation omitted).[1]

As for Topic 20, the Court finds that it, too, should not be permitted. Dr. Elsherif has not sued Mayo in its capacity as his medical provider, but solely in its capacity as his former employer. As discussed in this Court's previous Order, Mayo, in its capacity as employer, does not have access to the medical records that Dr. Elsherif seeks. (Order, ECF No. 282.) And Mayo, in its role as a healthcare provider, may not provide Mayo, as Dr. Elsherif's former employer, with medical information. *See* 45 C.F.R. § 164.502(a)(1) (listing permissible circumstances for disclosure of patient health information under HIPAA); *see also Firster v. Athens Heart Center, P.C.*, 305 F. Supp. 3d 1368 (M.D. Ga. 2017) (finding that a medical provider, when acting as an employer of the plaintiff, violates the ADA if it accesses the plaintiff's medical records without authorization). Had Dr. Elsherif seen a non-Mayo Clinic provider, he could not demand that his former employer testify as to his medical conditions, but instead would need to obtain that information from his medical provider. The present situation is no different. And Mayo has previously advised Dr. Elsherif regarding how to collect his medical records from Mayo Clinic, acting as his medical provider.

In sum, there is no legal or factual basis to compel a Rule 30(b)(6) deposition on Topics 16–20. Dr. Elsherif's Motion is DENIED.

### B.     Motion to Strike Errata

Mayo Clinic argues that the disputed changes to Dr. Elsherif's deposition testimony listed in Exhibit 4 of Mr. Wood's Declaration should be stricken. After careful consideration, the Court agrees.

---

[1] Dr. Elsherif argues that because Mayo has not objected to the topics on relevance grounds, they must be permitted. This argument fails for two reasons. First, relevance is not the only limiting factor in the scope of discovery; privilege, proportionality, access, and burden all play a role in determining discovery's appropriate scope in a given action. Fed. R. Civ. P. 26 (b)(1). Second, not all discovery methods are appropriate for obtaining different types of information. Indeed, the Court in *Inline Packaging* noted that using 30(b)(6) depositions to obtain the factual and legal bases for claims is "highly inefficient and burdensome." *Inline Packaging, LLC*, 2018 WL 9919939 at *9 (citation omitted).

Federal Rule of Civil Procedure 30(e) discusses how and when a deponent may make changes to their deposition testimony:

> (1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A) to review the transcript or recording; and
>
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

The plain language of Rule 30(e) permits a deponent to make changes in both form and substance to previous testimony, and some courts have read this language to permit broad substantive changes to deposition testimony. *See, e.g.*, *Podell v. Citicorp Diners Club*, 112 F.3d 98, 103 (2d Cir. 1997); *Aetna Inc. v. Express Scripts, Inc.*, 261 F.R.D. 72, 75 (E.D. Pa. 2009); *Cultivos Yadran S.A. v. Rodriguez*, 258 F.R.D. 530, 533 (S.D. Fla. 2009).

However, a number of other courts, including the Sixth, Ninth, and Tenth Circuit Courts, have held that Rule 30(e) does not permit substantive, or at least contradictory, changes to previous deposition testimony. *See Cham v. McNeilus Truck and Manufacturing, Inc.*, No. 11-cv-2569 (DWF/JJG), 2012 WL 12873768 at *2 (D. Minn. July 9, 2012) (collecting cases). The court in *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322 (W.D. La. 1992), explained its reasoning: "[Rule 30(e)] cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." *Id.* at 325.

The Eighth Circuit has not directly addressed this issue before, but this Court determined in *Cham* that previous Eighth Circuit cases weigh against interpreting Rule 30(e) to permit substantive or contradictory changes. It noted that in *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856 (8th Cir. 2010), the court stated that "a party cannot avoid summary judgment by contradicting previous sworn testimony." *Id.* at 867. Though *Cole* was addressing an affidavit filed in opposition to a motion for summary judgment, the reasoning is relevant to the situation at hand. Similarly, in *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir. 1983), the court stated "If testimony

under oath…can be abandoned many months later by the filing of an affidavit, probably no cases would be appropriate for summary judgment." *Id.* at 1365.

This line of reasoning is not simply limited to affidavits filed with summary judgment.  In *Marathon Ashland Petroleum, LLC v. International Brotherhood of Teamsters*, 300 F.3d 945 (8th Cir. 2002), a deponent changed his testimony after a break in the deposition and in response to cross-examination.  *Id.* at 950–51.  The court later held that this contradictory testimony could not be used to create a genuine issue of material fact in order to defeat summary judgment.  In doing so, the court noted, "the sham exception doctrine is not limited solely to situations when the party submits an affidavit contradicting his own earlier testimony… In context, [the deponent's] testimony after the break was not a mere clarification of his earlier testimony, but was a sudden and unexplained revision to create an issue where none existed before." *Id.*

Courts in this district have not followed a single path in resolving issues of this nature.  *See, e.g.*, *Cham*, 2012 WL 12873768 (granting motion to strike 15-page errata sheet); *but see ADT Sec. Servs., Inc. v. Swenson*, No. 7-cv-2983 (JRT/AJB), 2010 WL 276234 at *13–14 (D. Minn. Jan. 15, 2010) (determining that reopening the deposition and permitting further questioning would mitigate any concerns about contradictory testimony).

In this case, the Court finds that striking the errata sheet is the best way "to secure the just, speedy, and inexpensive determination" of this proceeding.  Fed. R. Civ. P. 1.  This Court shares the concern of other courts that permitting such extensive changes to a deposition transcript would be "unjust and inefficient, and essentially would render hours of deposition testimony meaningless." *Cham*, 2012 WL 12873768 at *3.  Here, the vast number of proposed changes, as well as the fact that many involve very substantive alterations to the meaning of the answers given, both weigh against allowing Dr. Elsherif to alter his testimony so radically after the fact.  And the Court cannot begin to fathom permitting Mayo to redepose Dr. Elsherif on the many changes he proposes.  Dr. Elsherif's first deposition occurred only after extensive conflict regarding the time, location, and manner of the deposition.  It required Dr. Elsherif to travel from his home in Tanta, Egypt to Cairo, Mayo to set up a dedicated network to ensure consistent and quality video feed, and a deposition that started in the middle of the night in the United States to accommodate the international time difference.  It was a logistical undertaking that was nearly impossible in March 2020, and would likely be even more challenging now in August 2020, as COVID-19 continues to affect both the United States and Egypt.

Redeposing Dr. Elsherif would require an enormous expenditure of time and resources, and could potentially create unnecessary risk for all involved.

Dr. Elsherif argues that the errata entries are justified, and should not be stricken for three reasons.  First, he argues that Mayo's counsel deposed him for nine hours instead of seven hours, in violation of Rule 30(d)(1).  Second, he states that his counsel was prevented from performing a cross-examination, in violation of Rule 30(c)(1).  Third, he asserts that the errata entries are necessary because Dr. Elsherif required an interpreter but did not have one.  None of these arguments carry the day.

Rule 30(d)(1) states: "Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours."  The parties did not request, and this Court did not order, additional time for Dr. Elsherif's deposition.  However, evidence in the record shows that the parties consented to the duration of the deposition.  (Stipulation, ECF No. 201 at ¶ 9. ("Elsherif agrees that Defendants may have up to nine (9) hours to complete his deposition.").)  And in fact, the deposition did not last nine hours.  Instead, defendants questioned Dr. Elsherif for a total of seven hours and ten minutes, and the total time spent from start to finish, including breaks, was eight hours, sixteen minutes.  (Elsherif Dep., ECF No. 307, at 1, 94, 145, 238, 264.)  Thus, Dr. Elsherif's assertion that he was deposed for an impermissibly long time is legally and factually inaccurate.

Dr. Elsherif next cites Rule 30(c)(1) in support of his proposed changes, stating that his counsel was not permitted to cross-examine him.  This Rule is inapposite.  Rule 30(c)(1) states "The examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615."  Nowhere in the rule does it say that a cross-examination is required for deposition testimony to be valid.  Nor was it the responsibility of Mayo's counsel to ensure that Dr. Elsherif's counsel had time to cross-examine Dr. Elsherif.  Counsel, knowing that the deposition of his client could last until at least 6:00 p.m. ESST, and that there might not be time to cross-examine him on that day due to the location's opening hours, could have arranged another date or time to cross-examine Dr. Elsherif.  Or, if he had not reached that conclusion prior to the deposition, counsel for Dr. Elsherif could have continued the deposition before its conclusion in order to schedule another date or time to perform the cross-examination.  Though Dr. Elsherif's counsel may now regret his failure to do so, the errata sheet is not an opportunity to sneak cross-examination testimony in the back door.

Finally, Dr. Elsherif once again argues that he was denied the right to an interpreter.  This is simply not true.  Nowhere in the record is there an indication that

Mayo prevented Dr. Elsherif from using an interpreter if he so chose. Dr. Elsherif continues to protest that he should not have to pay for an interpreter, but cannot point to any law that would suggest otherwise. Indeed, this Court has already ruled that if Dr. Elsherif wishes to use an interpreter during the proceedings, he must pay for it himself. (ECF No. 130.) The fact that this Court has now granted him *in forma pauperis* ("IFP") status does not change this ruling. IFP status permits a plaintiff to proceed in an action without prepaying the court fees and costs. Fed. R. Civ. P. 24 (a)(2). It does not require that the court pay for the plaintiff's costs of pursuing the litigation, nor does it shift fees to the defendant.

Furthermore, Dr. Elsherif's assertion that he is only fluent in English medical terminology is not born out by the record. At his deposition, Dr. Elsherif was instructed to advise Mayo's counsel when he did not understand a question, and he agreed that if he answered the question without seeking clarification, it would be assumed that he understood it. (Elsherif Dep. At 10–11.) Dr. Elsherif testified that there was no reason why he could not testify "truthfully and accurately" during the deposition. (*Id.* at 11.) And at the end of the deposition, he was given the opportunity to testify to anything he had not told Mayo's counsel about his claims. (*Id.* at 261.) This Court's review of the deposition transcript finds no indication that Dr. Elsherif did not understand what was being asked of him. And Dr. Elsherif makes no specific claims to the contrary.

In sum, Dr. Elsherif's use of the errata sheet to contradict his deposition testimony is not an appropriate use of Rule 30(e), and his arguments to the contrary are unavailing. However, not all corrections made by Dr. Elsherif need to be stricken. The corrections Dr. Elsherif made that fill in a word missed by the court reporter, for instance, or those correcting a transcription error, are reasonable corrections. Additionally, a few corrections made by Dr. Elsherif do not seem to substantially change his testimony, and indeed may even clarify the record by correcting an obvious mistake. As indicated on the errata sheet, those corrections should occur at: Page 16, line 15; page 46, line 9; page 110, line 18; page 111, line 24; and page 233, lines 18–21. However, these are the only corrections that should remain.

### C. Motion for Sanctions

Finally, in response to the motion to strike errata, Dr. Elsherif made a cross-motion for sanctions for "impeding the fair examination of deponent plaintiff." He seeks attorney fees and costs as well as a court order authorizing his entries on his deposition errata sheet. Based on the discussion above, the Court finds this motion to be meritless, and denies it.

### III. Order

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Dr. Elsherif's Motion to Compel, ECF No. 213, is DENIED;

2. Mayo Clinic's Motion to Strike, ECF No. 290, is GRANTED AS MODIFIED

    a. Errata sheet entries "correcting transcription mistake," "adding missing word," or "filling up missing words," and the following entries remain unstricken: Page 16, line 15; page 46, line 9; page 110, line 18; page 111, line 24; and page 233, lines 18–21; and

3. Dr. Elsherif's Motion for Sanctions, ECF No. 302, is DENIED.

Date: August 25, 2020

*s/ Katherine Menendez*
Katherine Menendez
United States Magistrate Judge